NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2249
_____

UNITED STATES OF AMERICA

v.

SHAWN DILLARD,

Appellant

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-08-cr-00270-001)
District Judge:  Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2011
_____

Before:  BARRY, AMBRO, and VAN ANTWERPEN, Circuit Judges

(Opinion filed: June 23, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

Shawn Dillard was indicted for participating in prostitution and various related

activities.  At his trial, the Government briefly and unintentionally displayed a reference

to the fact that Dillard had taken a polygraph examination. The District Court denied Dillard's motion for a mistrial. Dillard appeals. We affirm.

I.

As we write solely for the parties, we recite only those facts necessary to our decision. Dillard was a trooper for the Pennsylvania State Police. One of his duties as a trooper was to conduct anti-prostitution patrols. During the course of these patrols, Dillard took part in prostitution by, among other things, demanding sexual favors and money from women he detained and arrested. He also informed prostitutes and pimps of undercover operations and law enforcement activities.

In March 2009 Dillard was charged with multiple counts: conspiring to impede the due administration of justice and to promote interstate prostitution in violation of 18 U.S.C. § 371 (Count One); impeding the due administration of justice in violation of 18 U.S.C. § 1503 (Count Two); aiding and abetting interstate prostitution in violation of 18 U.S.C. §§ 1952(a)(3) (Count Three); Hobbs Act extortion in violation of 18 U.S.C. § 1951(a) (Counts Four through Seven); and making false statements to law enforcement officials in violation of 18 U.S.C. § 1001 (Counts Eight and Nine).

Dillard was tried in May 2009. During the Government's closing argument, the prosecutor displayed two inconsistent statements made by Dillard regarding his sexual involvement with a particular woman. The prosecutor pulled up the first statement, with the pertinent language ("I did *not* have sex with her") highlighted in bright yellow. But, because a portion of the statement was cut off by the monitor, the prosecutor cropped and displayed only the relevant language, which was then read to the jury. The prosecutor

2

did the same with the second statement, pulling up the complete document (which contained the highlighted words "I *did* have sex with her"), and then cropping the relevant portion. The defense objected and moved for a mistrial because the second full statement contained a reference to Dillard's "polygraph examination" in the first paragraph. The District Court denied the motion. The jury convicted Dillard of Counts Two, Three, Eight, and Nine, and acquitted him of Counts One, Four, Five, Six, and Seven.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Hakim*, 344 F.3d 324, 328 (3d Cir. 2003) (citing *United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001)).

On appeal, Dillard argues that the District Court abused its discretion by denying his motion for a mistrial because the Government's "publishing" of the second statement, containing an inadmissible reference to Dillard's polygraph examination, "severely damaged [his] testimony, which was the cornerstone of his defense, and effectively deprived him of his right to a fair trial." Dillard Br. 15. We disagree.

First, the facts belie Dillard's argument. As Chief Judge Kane stated when denying the motion for a mistrial, it was unlikely that members of the jury even saw the problematic phrase, as she was unable to read the document from where she sat. The words were only on the screen for a few seconds, were not emphasized in any way, and

3

the relevant highlighted portion later cropped by the prosecutor was at the bottom of the page, far removed from the offending reference in the first paragraph.

In any event, even if the jury did see the phrase, the error was harmless. As the Government points out, "the evidence of [Dillard's] guilt was overwhelming, consisting of eyewitness testimony of law enforcement officers, intercepted telephone conversations, the testimony of victims, telephone records[,] and Dillard's own admission of sexual involvement with women he had arrested for prostitution." Government Br. 19-20.

Second, the two cases Dillard cites in support of his argument are distinguishable. In *United States v. Murray*, 784 F.2d 188 (6th Cir. 1986), an FBI agent testified that the defendant had been required to take a polygraph examination. *Id.* at 188. The Court in that case found that the disclosure was deliberate and the proof of guilt was not sufficient to hold that the error was harmless beyond a reasonable doubt. *Id.* at 188-89. The Court also concluded that an erroneous jury instruction—that the Government was not required to prove guilt beyond a reasonable doubt—required reversal. *Id.* None of that is true of this case, in which disclosure was fleeting and accidental, proof of guilt was overwhelming, and there were no independent grounds for a mistrial.

Similarly, in *United States v. Brevard*, 739 F.2d 180 (4th Cir. 1984), an FBI agent testified that he questioned the defendant's alibi and had asked him to take a polygraph examination. *Id.* at 181. After the trial judge struck the testimony and instructed the prosecutor to avoid any further reference to the polygraph, the FBI agent mentioned it again during cross-examination. *Id.* at 181-82. The District Court gave an instruction to

4

the jury to disregard any reference to the polygraph and allowed the trial to proceed. *Id.* at 182. On appeal, the Fourth Circuit Court reversed, holding that the defendant's alibi defense made critical the issue of his credibility and that the jury could have inferred that the defendant failed the polygraph because he was not indicted until after he took the examination. *Id.* at 182-83. Again, this is not true of our case, in which the evidence of Dillard's guilt was overwhelming and did not turn on his testimony, and the context was not such that we could conclude that the jury could have made negative inferences about the results of the polygraph from the display of the second statement.

\* \* \* \* \*

For these reasons, we affirm.